HEMPSTEAD THEATRE CORPORATION et al., Respondents, *v.* METROPOLITAN PLAYHOUSES, INC., et al., Appellants, et al., Defendants.

Argued October 21, 1954; decided December 31, 1954.

*Lester Samuels, Milton C. Weisman* and *Louis M. Weber* for appellants.

*Bernard Bernstein* and *Stanley D. Halperin* for respondents.

*Per Curiam.* We agree with the courts below that the cause of action under attack should not be dismissed for legal insufficiency. It is impossible to say what facts may be developed under the allegations of this cause of action at the trial. It may not be said, as a matter of law, that the term "gross receipts", as used in the percentage lease before us, excludes the entire amount of $2,000,000 recovered by the tenant in settlement of the Federal antitrust suit. In short, questions of fact are presented which must be determined upon a trial.

The order should be affirmed, with costs, the first question certified answered in the affirmative, and the second question certified answered in the negative.

VAN VOORHIS, J. (dissenting). This is an action to recover percentage rent based on the operation of certain motion picture theatres. The seventh cause of action, whose legal sufficiency is challenged by defendants-appellants (hereafter called "Skouras"), alleges that the rental payable under all of these leases was at an annual fixed minimum plus an "aggregate annual percentage rental based upon the yearly gross receipts derived from the operation" of said theatres. The proportion of gross receipts allocable to the several plaintiffs is immaterial to the present motion.

The question is whether the $2,000,000 in cash together with other property paid to Skouras by Loew's, Inc., under an agreement in settlement of a civil claim under the Federal antitrust laws constitutes "gross receipts" upon which a percentage is payable to the landlords as additional rent under the leases.

There is no material difference between the definitions of gross receipts contained in the various rental agreements. The term is defined in substantially the same manner in each instrument "to include all income and revenue arising from the operation of each of the demised premises * * * including all receipts of whatsoever kind derived from each of said demised premises, and without limiting the generality of the foregoing, shall include: (1) all box office receipts excluding taxes on admissions; (2) all rentals and/or income derived from apartments, stores, offices or rentable space contained in said theatres, and all income derived from concessions and advertising; (3) all net receipts derived from the sale of admission or coupons outside of the box office."

The majority of the Appellate Division apparently adopted the reasoning of Special Term that it cannot be said as a matter of law that money is excluded from gross receipts which is received by a tenant of a moving picture theatre as damages allegedly caused to it by operators of other similar theatres acting in violation of the antitrust laws. These damages were charged to have been caused by a competitor of Skouras in resorting to monopolistic practices whereby these theatres leased by plaintiffs to Skouras were rendered second-run picture houses. Skouras was paid $2,000,000 in settlement of this claim. Special Term held that prima facie this money was received by Skouras from the operation of these theatres. No majority opinion was written at the Appellate Division, but the dissenting opinion by Presiding Justice PECK states that " The majority of the court is of the opinion that plaintiffs should not be foreclosed, on motion addressed to the complaint, from the opportunity of developing at the trial their theory that the payment received by Skouras in settlement of the litigation against Loew's in some respect represented ' gross receipts ' of the theatres in which plaintiffs were entitled to share.'' (283 App. Div. 922.) The theory upon which this cause of action has been sustained was evidently that the antitrust claim could not have been advanced against Loew's except in conjunction with the operation of these theatres by Skouras, and, hence, that the settlement included " income and revenue arising from the operation " of these theatres, within the definition of gross receipts contained in these leasehold agreements.

We agree with the dissenting Justices at the Appellate Division that, where the result is indicated inevitably upon the face of the complaint, it is prejudicial to permit the cause of action to proceed to trial. In that event, the decision of the motion addressed to the pleading disposes of the issue between the parties if the evidence at the trial coincides with the facts alleged. It is therefore necessary to examine whether plaintiffs would be entitled to recover if all of the facts were proved which are alleged in the seventh cause of action in the supplemental complaint.

The reasons stated in the dissenting opinion for rejecting the sufficiency of the seventh cause of action are also persuasive. Even if it were assumed for purposes of argument that the settlement money was paid by Loew's to Skouras as income and

revenue arising from the operation of the theatres, it would necessarily have been *net* income. All of these leases and agreements make it clear that the percentage rent is to be paid with respect to the gross receipts. Yet the seventh cause of action in the supplemental complaint alleges that " The payment provided for as aforesaid was based upon the loss of profits sustained by defendant Skouras in consequence of the loss of gross receipts at the theatres ". Manifestly loss of profits did not measure the gross receipts at these theatres or at any others. These profits which Skouras was prevented by Loew's from reaping at these theatres were not derived from actual business transacted at them, but from a hypothetical quantity of gross receipts that never were received at the box offices. If these landlords were entitled to recover percentage rents with regard to any aspect of these transactions, the percentages would have had to be computed upon the larger theoretical amounts which the box offices would have grossed if Loew's monopolistic practices had not rendered them second-run motion picture theatres. And the hypothetical volume of gross receipts would need to have been estimated at big enough figures to defray operating expenses of the theatres, including payment of rent, before yielding the profits on which Skouras' settlement was based.

If plaintiffs were entitled to recover percentage rents computed upon lost profits of Skouras from the operation of these theatres, as plaintiffs claim under their seventh cause of action, it would follow that Loew's paid Skouras too much in settlement. Loss of profits was the maximum that Skouras could have recovered in the antitrust suit under the heading of compensatory damage to business or property (U. S. Code, tit. 15, § 15). Profits could be computed only after deducting all rent including percentage rent payable for the use of these theatres. If plaintiffs were correct in their theory, whatever percentage rent they succeeded in recovering from Skouras ought to be refunded to Loew's inasmuch as Skouras could have had no right to recover anything to apply on that item from Loew's in the first place. Whether plaintiffs have a cause of action in their own right against Loew's is another matter, not decided now, but however that question might be resolved it is clear that plaintiff's claim against Skouras and Skouras' claim against Loew's are mutually exclusive. Any omission to include percentage rent in the settlement obtained by Skouras against Loew's could not have been

inadvertent; it would have been impossible, no matter how vigilant Skouras might have been, to have recovered anything by way of additional percentage rent payable to the landlord. Skouras would have been confined by the Federal Courts in the antitrust litigation to lost profits except for treble damages and other unrelated items. Rent payable to a landlord could not have been included in the category of profits prevented. It follows that the tenant could not have sued on behalf of the landlord, could not have recovered anything payable to the landlord under its own cause of action, nor could the landlord have joined in the tenant's action inasmuch as any right to recovery on the part of the landlord would not have been derivative but independent and in the landlord's own right.

This circumstance appears to have led the United States District Courts for the Southern District of New York and for the District of New Jersey, in the only two cases upon the point cited to support the holding below, to conclude that a cause of action for damage to the real property belongs to the owner rather than to the operator of the motion picture theatre (*Camrel Co.* v. *Paramount Film Distr. Corp.,* U. S. Dist. Ct., S. D. N. Y., March 30, 1944, C. C. H. Trade Cases, par. 57233; *East Orange Amusement Co.* v. *Vitagraph,* U. S. Dist. Ct., N. J., June 24, 1943, C. C. H. Trade Cases, par. 52956). In both of those cases motions to dismiss complaints of owners of theatres were denied, where the suits were brought for damages against distributors of motion pictures on the theory that the value of the real estate had been impaired by monopolistic practices in rendering them second run motion picture houses. The United States District Court for the Eastern District of Pennsylvania thought in *Harrison* v. *Paramount Pictures* (115 F. Supp. 313, 316–317, decided Sept. 11, 1953) "that if this landlord has any rights at all in the property which could be injured by a conspiracy to withhold first-run pictures, directed against or participated in by the tenant, they are remote, uncertain and insubstantial." In the *Harrison* case, the landlord was suing for diminution in rent from his real property rather than for general depreciation.

Defendants-appellants urge that damages to a landlord under such circumstances would in any event be too remote, and that if plaintiffs would be precluded from recovering against Loew's for that reason, a fortiori they could not recover percentage rent

against Skouras. In support of the defense of remoteness, which in this context would mean that the grounds for suit in the antitrust litigation are too far removed from the present issue to classify as gross receipts the money paid in settlement, defendants-appellants point out that in consideration of the settlement Skouras released Loew's from claims for treble damages, forfeitures, counsel fees and other litigation expense (U. S. Code, tit. 15, § 15). Under no theory could percentage rent be computed upon those items, nor can it be readily understood how a lump sum paid in settlement for an acquittance from all of those claims could be broken down and apportioned into specified amounts allocated to each component factor, at least not without what would amount to a trial of the antitrust suit in the State courts.

The order appealed from should be modified so as to direct judgment to be entered dismissing the seventh cause of action alleged in the supplemental complaint against appellants Metropolitan Playhouses, Inc., and Skouras Theatres Corporations as well as against Circuit Vendors, Inc., and, as so modified, affirmed, with costs to appellants. The questions certified should be answered as follows: Question No. 1 concerning whether the seventh cause of action states facts sufficient to constitute a cause of action, should be answered in the negative; question No. 2 concerning whether Special Term erred in failing to grant appellants' motion to dismiss the seventh cause of action, should be answered in the affirmative.

DESMOND, DYE, FULD and FROESSEL, JJ., concur in Per Curiam opinion; VAN VOORHIS, J., dissents in an opinion in which LEWIS, Ch. J., and CONWAY, J., concur.

Order affirmed, etc.