**SNOW CREST BEVERAGES, Inc., et al.**

v.

**RECIPE FOODS, Inc.**

**Civ. A. No. 55–770.**

United States District Court
D. Massachusetts.

Dec. 19, 1956.

As Corrected Dec. 26, 1956.

**908**

James D. St. Clair, Hale & Dorr, A. Morris Kobrick, Mintz, Levin & Cohn, Boston, Mass., for plaintiff.

Robert W. Meserve, John R. Hally, Nutter, McClennen & Fish, Boston, Mass., for defendant.

WYZANSKI, District Judge.

Under Rule 56(b), Fed.Rules Civ. Proc., 28 U.S.C.A. defendant moves for summary judgment on the claim of plaintiff, Polar Cola of America, Inc. (not the claim of Snow Crest Beverages, Inc.), on the ground that the complaint does not show that it is a "person injured in his business or property" within § 4 of the Clayton Act, 15 U.S.C.A. § 15.

The complaint is in two parts, part one being the statement of Snow Crest Beverages, Inc. and part two being the statement of Polar Cola Company of America, Inc. Part one alleges that Snow Crest is a bottler whose principal business was the sale in bottles of various flavors of a syrup, sold under the trade name "Snow Crest" and designed to be mixed with water to yield a soft drink. Defendant Recipe Foods, Inc. is a competitor of Snow Crest, manufacturing and selling in the same markets similar syrups. It is further alleged that, with the effect of restraining commerce, substantially lessening commerce, and attempting to monopolize commerce, defendant damaged Snow Crest by inducing dealers to enter into exclusive purchasing contracts for syrup, and in connection therewith to sell such Snow Crest syrup as they had on hand. Other allegations respecting defendant's selling practices are set forth; but no allegations refer to its manufacturing activities. Defendant's alleged selling activities are said to be unlawful as contracts in restraint of trade (see § 1 of the Sherman Act, 15 U.S.C.A. § 1), an attempt to monopolize (see § 2 of the Sherman Act, 15 U.S.C.A. § 2), and as tieing agreements (see § 3 of the Clayton Act, 15 U.S.C.A. § 14). Thus the gist of the complaint turns on competitive practices in the market for the sale of syrup.

Part two alleges the same conduct of defendant but describes Polar Cola's business as consisting "solely of the manufacture and sale (apparently only to bottlers and not to dealers) of extracts which are used as a major ingredient in the manufacture of beverage syrup." It is alleged that there is "common operating control with Snow Crest the two together being conducted substantially as an integrated business unit." "Polar Cola's primary function is to supply Snow Crest its full requirement of extracts". "More than 90% of Polar Cola's product goes to Snow Crest. Of this quantity, purchased by Snow Crest, more than 90% is used by Snow Crest in the manufacture of syrups". Polar Cola claims that it is "intimately tied in with Snow Crest" and that the latter's losses have "directly caused similar financial injury to Polar Cola."

From affidavits of Polar Cola's treasurer, Edward Rachins, and a deposition taken of him it appears that at all relevant times he has been the sole owner of all the stock of Snow Crest Beverages, Inc., and that the stock of Polar Cola Company has been so divided that he continuously held 50 per cent of the outstanding capital stock and the other 50 per cent was held until her death in September 1954 by his wife, and thereafter by her administrator for the benefit of Mr. Rachins and his 14 year old son.

From the same affidavits it appears that in each of the years 1952, 1953, and 1954 over 97 per cent of Polar Cola's extract was sold to Snow Crest and 92 per cent or over of Polar Cola's extract was used by Snow Crest for syrup.

It is well settled that despite its broad language § 4 of the Clayton Act does not give a private cause of action to a person whose losses result only from an interruption or diminution of profitable relationships with the party directly affected by alleged violations of the anti-trust laws. Recovery under that section has been denied to a landlord of a competitor injured by the defendant although the landlord had a percentage rental. Melrose Realty Co. v. Loew's Inc., 3 Cir., 1956, 234 F.2d 518, 519, certiorari denied 1956, 77 S.Ct. 128. Likewise, recovery was denied to a patent licensor who would have received royalties from one of the defendant's competitors injured by the defendant's violations of the anti-trust laws. Productive Inventions, Inc. v. Trico Products Corp., 2 Cir., 1955, 224 F.2d 678, certiorari denied 1955, 350 U.S. 936, 76 S.Ct. 301. The same attitude has precluded employees of an injured competitor from recovering under the anti-trust acts. Corey v. Boston Ice Co., D.C.Mass.1913, 207 F. 465, 466; Gerli v. Silk Association of America, D.C.S.D.N.Y.1929, 36 F.2d 959; Walder v. Paramount Publix Corp., D.C.S.D.N.Y.1955, 132 F.Supp. 912, 916. Without trying to spell out in detail the justification for these decisions, it may be noted that if they had gone the other way, there would as a result of the treble damage provisions of the anti-trust acts have been given in each case to the plaintiff what has sometimes been called a "windfall". Conference of Studio Unions v. Loew's, Inc., 9 Cir., 193 F.2d 51, 55. In effect, businessmen would be subjected to liabilities of indefinable scope for conduct already subject to drastic private remedies. Courts aware of these considerations have been reluctant to allow those who were not in direct competition with the defendant to have a private action even though as a matter of logic their losses were foreseeable. Congress has failed to amend the anti-trust laws on this point in the face of repeated decisions. It seems to have been content for the judiciary to take a position narrower than that often applied in non-statutory tort cases and in cases where plaintiffs are not allowed a multiple recovery.

The policy considerations which have led to a narrow construction of § 4 of the Clayton Act are not overborne by any fact alleged in the complaint, or shown in the affidavits or deposition.

It is not sufficient to show that Mr. Rachins owns all the stock of Snow Crest, and he owns half and an estate of which he and his minor son are the beneficiaries owns the other half of the stock of Polar Cola. First, there is not identity of equitable ownership. Second, if there were identity it would be immaterial. Those who organized the corporations chose to take the advantages and disadvantages which flow from separate legal personalties. Cf. Timken Roller Bearing Co. v. United States, 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199. They placed only one of the two corporations in direct competition with defendant. And their choice limits their potential recovery. A possible further reason for this conclusion is that in this particular case, the organizers of these two corporations have so divided the business functions between the two corporations that it is easy to allocate economic losses occurring at three separate stages: (1) manufacturing, (2) sales from the manufacturer to the bottler, and (3) sales from the bottler to the dealer. If the complainants had not made such an allocation, probably a tribunal would not make it no matter how logical, because of its inherent difficulty of proof. But the allocation having been made, and the losses at the third stage being the only ones occurring in the field of the alleged unlawful competition, limitation of recovery to losses in that field coincides with the policy considerations which have led to a narrow construction of Section 4 of the Clayton Act.

Nor is it sufficient to show that plaintiff Polar Cola supplies virtually all its extract to plaintiff Snow Crest. This is the plain teaching of the already cited cases involving landlords and employees. In the employee and presumably in the landlord situation plaintiff who was denied recovery was supplying to the competitor directly injured all his services or all his property. The motion for summary judgment should be granted. If plaintiff Polar Cola desires to appeal this ruling, the appeal should be finally adjudicated before part one of the complaint is tried. If a reversal is in order, and Polar Cola's claim is appropriate for trial, it would be advantageous to have Polar Cola's claim heard simultaneously and not subsequent to Snow Crest's. There being no just reason for delay, a final judgment on Polar Cola's claim will be entered, after its form is submitted to me and duly executed pursuant to Rule 54(b).