**CONGRESS BUILDING CORPORATION,**
Plaintiff-Appellant,

v.

**LOEW'S, INCORPORATED, et al.,**
Defendants-Appellees.

No. 11941.

United States Court of Appeals
Seventh Circuit.

May 31, 1957.

Rehearing Denied July 29, 1957.

Thomas C. McConnell, Benjamin Wham, W. Donald McSweeney, Francis J. McConnell, Harry D. Lavery, Chicago, Ill., for appellant.

John F. Caskey, New York City, Robert W. Bergstrom, David Levinson, Samuel W. Block, Wesley G. Hall, Chicago, Ill. (John J. Faissler, Harold Shapiro, Francis E. Matthews, Chicago, Ill., of counsel), for appellees.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This action was commenced in the District Court as a private antitrust suit under Sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15, 26, to recover treble damages for injuries alleged to have been sustained by reason of defendants' violation of the Sherman and Clayton Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq., and for injunctive relief. The District Court granted defendants' motion for summary judgment on the ground that plaintiff is not a person injured in its business or property within the meaning of Section 4 of the Clayton Act and, therefore, is not entitled to maintain this action. (Reported in CCH Trade Cas. Par. 68,513 (1956).)

Plaintiff is the non-operating owner-lessor of a motion picture theater property located in Chicago, Illinois. The theater is leased to defendant Balaban & Katz (B & K) which controls the operation of the theater. Under the terms of the lease plaintiff is entitled to a fixed minimum rental plus a percentage of the lessee's gross receipts. The lessee has at all times paid the minimum rental, but, as alleged by plaintiff, the receipts, and thus the amounts payable by the lessee under the percentage clause, have been kept down due to the illegal trade practices of the defendant-lessee B & K, certain motion picture distributors and certain affiliated exhibitors in the City of Chicago. Plaintiff alleged that the defendants, including the defendant-lessee, engaged in a conspiracy to monopolize first and first subsequent run exhibition of motion pictures in the City of Chicago and to restrain trade and commerce in the licensing of motion pictures for exhibition by suppressing the competition of independent exhibitors, by the establishment of a uniform system of minimum theater admission prices to be charged by exhibitors, uniform playing positions for theaters and a uniform system for releasing motion pictures for exhibition. Plaintiff further alleged that the effect of these illegal trade practices was to relegate its theater to an inferior exhibiting position thereby depriving plaintiff of rentals under the percentage clause that it otherwise would have received.

The question of whether a non-operating lessor may maintain a treble damage action has been infrequently litigated and such decisions as there are are difficult to reconcile. In East Orange Amusement Co. v. Vitagraph, Inc., D.C.N.J., CCH Trade Cas. Par. 52,965 (1943), the lessor claimed that antitrust violations had caused his lessee to default in the payment of rent and that this default, in turn, resulted in the lessor's loss of his real estate to a mortgagee. And in Camrel Co. v. Paramount Film Distributing Corp., D.C.S.D.N.Y., CCH Trade Cas.Par. 57,233 (1944), the lessor claimed, as a result of alleged antitrust violations, injury to the rental and

market value of its real estate and, in addition, injury under a percentage rental clause like that in the instant case. The District Court in each of the above cases upheld the lessor's capacity to sue by denying motions to dismiss. However, neither court gave substantial treatment to the problem. The authority of these cases may be in doubt because of later decisions by the Courts of Appeals for their respective circuits. See Harrison v. Paramount Pictures, Inc., D.C.E. D.Pa., 115 F.Supp. 312, affirmed 3 Cir., 211 F.2d 405, certiorari denied 348 U.S. 828, 75 S.Ct. 45, 99 L.Ed. 653; Melrose Realty Co. v. Loew's, Inc., 3 Cir., 234 F. 2d 518, certiorari denied 352 U.S. 890, 77 S.Ct. 128, 1 L.Ed.2d 85; Productive Inventions, Inc., v. Trico Products Corp., 2 Cir., 224 F.2d 678, certiorari denied 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (these cases will be considered shortly).

This problem was also before the court in Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.S.D.N.Y., 30 F.Supp. 389, affirmed 2 Cir., 113 F.2d 114, where it was held that the injuries to the lessor were too remote to entitle him to maintain the action. It must be noted that in the East Orange, Camrel and Westmoreland cases the lessee was also a victim of the alleged antitrust violations which is not the case here, as the defendant-lessee is alleged to have been a participant in the trade practices complained of.

Harrison v. Paramount Pictures, Inc., D.C.E.D.Pa., 115 F.Supp. 312, is the first decision to deal fully with the problems peculiar to a suit by a lessor. The lessor, a non-operating theater owner, claimed injury to the market value of her theater and injury under a percentage rental clause, as a result of alleged antitrust violations. Although the court's opinion is not explicit on this point, it appears that the lessee was alleged to be one of the co-conspirators. The court held that the lessor did not have capacity to sue on two alternative lines of argument: (1) that the interest of the lessor was such that there could be no injury

in "his business or property," as required by Section 4 of the Clayton Act; (2) that even if there were injury to his business or property within the meaning of Section 4, it would be too remote to be compensable. The Court of Appeals affirmed in a per curiam opinion and adopted the reasoning of the District Judge. 3 Cir., 211 F.2d 405, certiorari denied 348 U.S. 828, 75 S.Ct. 45.

The problem was next considered in Steiner v. 20th Century-Fox Film Corp., 9 Cir., 232 F.2d 190. The lessor, another non-operating theater owner, claimed that as a result of alleged antitrust violations she was forced to lease her theater for less than a reasonable rental. The prime lessee was alleged to be one of the co-conspirators and initially was made a party defendant. However, the lessor dismissed her complaint as against the lessee. There, as here, it was asserted that the lessor's interest is too remote to be compensable. The court distinguished the Harrison case and held that the lessor was entitled to maintain the action, saying:

> "Here the complaint affirmatively alleges direct injury to the [lessor], not the lessee. It is said the appellees' wrongful acts operated directly upon the [lessor]. This is sufficient for the [lessor] to become a proper party to complain of the conspiracy alleged." 232 F.2d at page 193.

The court distinguished the Harrison case as follows:

> "The cases cited by the appellees are not factually similar to the case at bar. In Harrison v. Paramount Pictures [citation] there were no direct dealings between the plaintiff and defendant. Here the [lessor] asserts the appellees conspired with the prime lessee to force [lessor] to receive less than a reasonable rent." 232 F.2d at page 193.

The court's treatment of the Harrison case is confusing. If, when the court said, "there were no direct dealings between the plaintiff and defendant" in Harrison, it meant that the lessee was not alleged to be one of the co-conspir-

ators, it is in error. If, on the other hand, the court meant that there were no direct dealings between the plaintiff and the defendants other than the lessee, it is probably correct. The court may have well intended the latter since there is some language in the court's opinion which indicates the lessor in Steiner alleged that the defendants other than the lessee had direct dealings with her. The question then arises whether this is a significant distinction.

The problem was again considered by the Third Circuit in Melrose Realty Co. v. Loew's, Inc., 234 F.2d 518, certiorari denied 352 U.S. 890, 77 S.Ct. 128, and the court adhered to the rule laid down in the Harrison case. The only reference made by the court to the Steiner case is found in Chief Judge Biggs' dissent on the petition for rehearing. 234 F.2d at page 519.

The rationale of Harrison was approved by the Second Circuit in Productive Inventions, Inc., v. Trico Products Corp., 224 F.2d 678, 679, certiorari denied 350 U.S. 936, 76 S.Ct. 301. The plaintiff, a patentee, who had granted to another an exclusive license upon a royalty basis, claimed injury due to a loss of royalties on sales that might have been made save for the alleged antitrust violations of the defendant. The court held that the licensor had no standing to sue because its loss was "beyond the limit of injuries cognizable under the anti-trust laws." The injury asserted by the licensor is analogous to the injury claimed by the plaintiff in the instant case under the percentage rental clause. It should be noted, however, that the licensee was also a victim of the alleged antitrust violations, and not a co-conspirator.

The Harrison rationale has been also cited with approval in Miley v. John Hancock Mutual Life Insurance Co., D.C. Mass., 148 F.Supp. 299, affirmed, 1 Cir., 242 F.2d 758; and Snow Crest Beverages, Inc. v. Recipe Foods, Inc., D.C. Mass., 147 F.Supp. 907. In Miley, the plaintiff, an insurance broker, claimed injury to his business due to loss of insurance premiums which he would have earned save for the alleged antitrust violations of the defendants by causing the insurance company which he was representing to lose a profitable contract. And in the Snow Crest case the plaintiff claimed injury due to loss of business as the supplier of another who was the intended victim of the alleged antitrust violations. In each of these cases the court adopted the Harrison rationale and held that the interest of the plaintiff was too remote to be compensable and, therefore, each lacked the standing to maintain the action.

The situation in the Northern District of Illinois, Eastern Division, only adds to the confusion. In two recent decisions, in cases virtually indistinguishable factually from the instant case, that court has held that a non-operating theater owner is entitled to maintain a treble damage action. Tower Building Corp. v. Loew's Inc., CCH Trade Cas.Par. 68,537 (1956); and 1617 Belmont Co. v. Columbia Pictures Corp., No. 52–C–251 (unreported).

Turning to factually dissimilar situations where this general problem has been considered, we find some degree of uniformity. The courts have uniformly denied recovery to stockholders, Gerli v. Silk Ass'n of America, D.C.S.D.N.Y., 36 F.2d 959; Loeb v. Eastman Kodak Co., 3 Cir., 183 F. 704, creditors, Loeb v. Eastman Kodak Co., supra, and deposed officers of a corporation, Corey v. Boston Ice Co., D.C.Mass., 207 F. 465, who claimed injury as the result of alleged antitrust violations. See also Productive Inventions, Inc., v. Trico Products Corp., 2 Cir., 224 F.2d 678, certiorari denied 350 U.S. 936, 76 S.Ct. 301; Miley v. John Hancock Mutual Life Insurance Co., D.C.Mass. 148 F.Supp. 299, affirmed, 1 Cir., 242 F.2d 758; and Snow Crest Beverages, Inc., v. Recipe Foods, Inc., D.C.Mass., 147 F.Supp. 907, which are discussed above. On the other hand, this court has permitted a sales agent to recover lost commissions and it is of note that his employer was a participant in the trade practices complained of. Roseland v. Phister Mfg. Co., 7 Cir., 125

F.2d 417, 139 A.L.R. 1013. See also, Vines v. General Outdoor Advertising Co., 2 Cir., 171 F.2d 487; McWhirter v. Monroe Calculating Mach. Co., D.C.W.D. Mo., 76 F.Supp. 456; and Klein v. Sales Builders, Inc., D.C.N.D.Ill., CCH Trade Cas.Par. 62,600 (1950).

It is not clear why the interest of a sales agent should be considered less remote than the interest of either a stockholder, creditor or employee. However, the diverse treatment of the stockholder-creditor cases and the sales agent cases is not without its justification. To permit individual stockholder recovery would run counter to the traditional treatment of corporate injury that the corporation is the proper party to redress corporate wrongs. And direct recovery by the individual creditor would give him a preference over other creditors of the insolvent business and such recovery may act to thwart the policy of the bankruptcy laws. Further, the number of stockholders and creditors might produce an insurmountable problem of multiplicity of suits. These problems are not present in the sales agent situation nor are they present in the non-operating lessor situation. On the basis of this analysis, it would seem more logical that the instant case be aligned with the sales agent cases, rather than the stockholder-creditor cases. It is also true that considerations such as these may be grounds for distinction in cases where the lessee is also injured as the result of antitrust violations and cases where the lessee is a party to the antitrust violations. For example, would the defendants be subject to two actions, one by the lessor and one by the lessee. Suppose the lessee sues first and recovers, should the damages be apportioned between lessor and lessee and, if so, how? Another problem is that of settlements by one of the parties without the participation or consent of the other. See Hempstead Theatre Corp. v. Metropolitan Playhouses, Inc., 308 N.Y. 712, 124 N.E.2d 332. None of these problems is present in the lessor situation where the lessee is a party to the antitrust violations, and may justify a different result.

Section 4 of the Clayton Act provides that:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained * * *."

Notwithstanding the broad language of Section 4, which literally, at least, appears to give the plaintiff herein a cause of action, the courts have narrowed the apparent scope of this statute usually on the ground, more or less expressed, that in view of the severity of the penalty a line must be drawn. Thus, in the Harrison case the court said:

"In determining the scope of the Act it must be remembered that the treble damage feature is an enforcement provision and superimposes a penalty upon compensation. As such it should not be literally construed if unreasonable results would be reached by so doing. Obviously, there must be a limit somewhere." 115 F.Supp. at page 317.

And in Snow Crest Beverages, Inc., v. Recipe Foods, Inc., D.C.Mass., 147 F. Supp. at page 909, the court said:

"Without trying to spell out in detail the justification for these decisions, it may be noted that if they had gone the other way, there would as a result of the treble damage provisions of the anti-trust acts have been given in each case to the plaintiff what has sometimes been called a 'windfall'. [Citing.] In effect, businessmen would be subjected to liabilities of indefinable scope for conduct already subject to drastic private remedies."

Compare with these statements, however, the one made by this court in Roseland v. Phister Mfg. Co., 125 F.2d at page 420:

"We may not by what seems to us a strained and unjustified limitation

bar plaintiff from the statutory remedy. 'Congress evidently foresaw the wholesome effect of pecuniary responsibility for injuries resulting from such forbidden combinations and the courts should not devitalize the remedy by strained interpretations calculated to encourage disregard of the law.'"

And as recently as this year the Supreme Court has admonished the inferior federal courts that:

"Petitioner's claim need only be 'tested under the Sherman Act's general prohibition on unreasonable restraints of trade,' [citing] and meet the requirement that petitioner has thereby suffered injury. Congress has, by legislative fiat, determined that such prohibited activities are injurious to the public and has provided sanctions allowing private enforcement of the antitrust laws by an aggrieved party. These laws protect the victims of the forbidden practices as well as the public. [Citing.] Furthermore, Congress itself has placed the private antitrust litigant in a most favorable position through the enactment of § 5 of the Clayton Act. [Citing.] In the face of such a policy this Court should not add requirements to burden the private litigant beyond what is specifically set forth by Congress in those laws." Radovich v. National Football League, 352 U.S. 445, 453–454, 77 S.Ct. 390, 395, 1 L.Ed.2d 456.

Since the District Court decision in the Harrison case is the only decision to deal fully with the problems peculiar to a suit by a lessor and since defendants' argument herein suggests no additional considerations, we shall consider in detail the rationale set forth therein. The court said, 115 F.Supp. at page 316:

"The plaintiff has not shown and does not allege that she has ever had any business transactions with the defendants. She is not in the business of operating a motion picture theatre."

We do not think it significant that the plaintiff was not in direct competition with the defendants. In Snow Crest Beverages, Inc., v. Recipe Foods, Inc., D.C.Mass., 147 F.Supp. at page 909, the court stated:

"Courts aware of these considerations have been reluctant to allow those who were not in direct competition with the defendant to have a private action even though as a matter of logic their losses were foreseeable. Congress has failed to amend the antitrust laws on this point in the face of repeated decisions. It seems to have been content for the judiciary to take a position narrower than that often applied in nonstatutory tort cases and in cases where plaintiffs are not allowed a multiple recovery."

Not only is this "limitation" without support in the language of Section 4 but it appears to have been implicitly rejected by the Supreme Court. E. g., Radovich v. Nat. Football League, 352 U.S. 445, 77 S.Ct. 390; and Bigelow v. R. K. O. Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652. And furthermore, there are many decisions to the contrary. E. g., Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241; Steiner v. 20th Century-Fox Film Corp., 9 Cir., 232 F.2d 190; Roseland v. Phister Mfg. Co., 7 Cir., 125 F.2d 417; McWhirter v. Monroe Calculating Mach. Co., D.C.W.D.Mo., 76 F.Supp. 456; Klein v. Sales Builders, Inc., D.C.N.D.Ill., CCH Trade Cas.Par. 62,600 (1950); East Orange Amusement Co. v. Vitagraph, Inc., D.C.N.J., CCH Trade Cas.Par. 52,965 (1943); Camrel Co. v. Paramount Film Distributing Corp., D.C.S.D.N.Y., CCH Trade Cas. Par. 57,233 (1944).

As to the question of injury the court in Harrison said, 115 F.Supp. at page 316:

"First, she says that if the theatre had been operated by the tenant showing pictures on first-run, the receipts would have been greater and she might have obtained a larger

rental, by way of percentage, than she did. The fact is that while she would have had a right to rental above the minimum, if earned, she had nothing more than a hope that it ever would be earned."

To characterize the interest of the lessor under the percentage clause as no more than a "hope" is to subtly beg the question and ignore the fact that most economic dealings and transactions are founded on "hope"—the hope of making a profit. In any event, it would seem to be a hope which should not be impaired with impunity by violations of the law. See Vines v. General Outdoor Advertising Co., 2 Cir., 171 F.2d 487; Roseland v. Phister Mfg. Co., 7 Cir., 125 F.2d 417. Furthermore, it may be fairly assumed that in bargaining for the percentage clause, the lessor undoubtedly accepted a lower minimum rental than it would otherwise have agreed to. In other words, plaintiff accepted a lower minimum rental in return for the "hope" of a percentage of the lessee's receipts, and thereby accepted as well, a share of the risks of the business. Since plaintiff accepted some part of the business risks, plaintiff would appear to be entitled to rely on statutory remedies whose purpose is to reduce such risks. This would obviously be the case if the plaintiff and B & K were partners in the operation of the theater.

In Harrison the court continued, 115 F.Supp. at page 316:

"The tenant could have operated the business, from whatever motive, so as to keep the percentage from ever exceeding the minimum, for example, by cutting admission charges, discontinuing advertising or showing nothing but foreign language or documentary films, and there would be no right which the plaintiff could have asserted against him in that respect."

This statement ignores the fact that the lessor is not asserting mismanagement by the lessee or merely expressing disappointment in the lessee's receipts, but rather that the lessee in conjunction with others conspired to and did violate the antitrust laws to the plaintiff's injury. Surely the fact that the operation of the theater was entrusted to the discretion of the lessee does not give the lessee the right to flaunt the antitrust laws, nor can we see why this fact should deny plaintiff the protection of and the right to rely on statutory remedies provided by the antitrust laws.

The court continued, 115 F.Supp. at page 317:

"But even if it be assumed that the plaintiff had some property, some right, which was susceptible of injury, and that such injury could be traced to the acts of the defendants, the question of remoteness remains."

If the plaintiff's allegations are proved, we are at a loss to see how it can be said that it has not been injured. In fact, everyone seems to concede the existence of the injury, but then counter with the argument that it is too remote to be compensable. We think the alleged acts of the defendants are clearly the direct and proximate cause of the injury. What intervening factors are there to consider? The only one that suggests itself is that if competitive conditions had prevailed would the lessee's operation of the theater have been more profitable with resulting pecuniary benefit to the lessor under the percentage clause. This problem, however, is present when a lessee sues. See Bigelow v. R. K. O. Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574. In fact, the similarity between the proof necessary in each of these cases is obvious. The antitrust violation has allegedly decreased the receipts of the enterprise by an amount which is ascertainable and recoverable where the lessee sues. See Bigelow v. R. K. O. Radio Pictures, Inc., supra. For a lessor to establish the extent of his injury under the percentage clause, he would make virtually the same proof as the lessee. The only hidden assumption in this analysis is that in most instances the interests of the lessor and lessee would coincide. In other words, whatever operation of the theater would produce the greatest return for

the lessee would also produce the greatest return for the lessor. Only when the outside interests of the lessee dictated a less profitable operation of the lessor's theater would there be a divergence in their respective interests.

In the Harrison case the court continued, 115 F.Supp. at page 317:

"The difficulties which would arise unless some consideration be given to the remoteness or indirectness of the injury are particularly apparent in the motion picture business, in which thousands of theatres are owned by persons who have nothing to do with the operation of them and no right to interfere."

However, to deny recovery to the plaintiff would "devitalize the remedy by strained interpretations calculated to encourage disregard of the law." Roseland v. Phister Mfg. Co., 7 Cir., 125 F.2d at page 420. The only thing an intended violator need do is join forces with the lessee as was done here and violate the law with impunity, free from private actions for treble damages. [The problem of multiplicity of suits to which the court alluded is not similar to stockholder-creditor cases where a single entity exists to redress the wrong, for here there is no such entity. In fact, if the lessor cannot sue there will be no private redress for the defendants' wrongful acts. Furthermore, multiplicity is always present where the acts of the tortfeasor injure more than one individual. ].

The court continued, 115 F.Supp. at page 317:

"In such a situation, where a tenant desires a particular kind of product, must the distributors seek out the owner of the building to ascertain whether they can safely give the tenant what he wants? It seems clear that unless a line is drawn excluding remote and indirect injuries to property owners in similar cases, an almost intolerable burden would be placed upon the whole industry."

In the first place, the most elementary conceptions of justice and public policy require that a wrongdoer shall bear the risk of any burdens which his wrong has created. Cf. Bigelow v. R. K. O. Radio Pictures, Inc., 327 U.S. 251, 66 S.Ct. 574. And secondly, the "burden" to which the court alluded is in fact nonexistent. The film distributors can obviously enter into *legitimate* business arrangements with the lessee without incurring liability and without the need for lessor approval of such arrangements. This is not to say, however, that the film distributor can engage in illegal trade practices without fear of legal redress by an injured party.

Finally, we return to the argument that the lessor was not injured in "his business or property" within the meaning of Section 4 of the Clayton Act. The defendants herein contend that, "Once the lease had been executed, plaintiff's 'business' of leasing ceased." We do not think it necessary to consider this "argument," for we think it clear that plaintiff was injured in its property. "A man is injured in his property when his property is diminished." Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U.S. 390, 399, 27 S.Ct. 65, 67. Under the terms of the lease plaintiff retained the right to the reversion of the fee after the expiration of the leasehold, a right to a minimum rental, and a right to a percentage of the lessee's gross receipts if and when the minimum rental was earned. The lessor's rights under the lease were undoubtedly of value and could have been sold, bartered or given away. To the extent that the value of any of these rights is diminished, the lessor is injured. Whatever the legal characterization of these rights may be, they are clearly within the term "property" as used in Section 4 of the Clayton Act. And as was said in Roseland v. Phister Mfg. Co., 7 Cir., 125 F.2d at page 420, "It is the source of injury, not the character of property or business injured, which constitutes the test of recovery."

In summary, the injury that plaintiff allegedly sustained is susceptible of proof, both as to the fact of injury and as to the amount of damages; the injury to plaintiff as a non-operat-

ing lessor was not unforeseeable; the acts of the defendants are the direct and proximate cause of such injury; and the plaintiff is seeking recovery in its own right, not derivatively through the lessee. In these circumstances we do not believe that recovery should be denied on some vague notion that "a line must be drawn." We therefore decline to follow the rule laid down by the Third Circuit in the Harrison and Melrose decisions.

In the alternative the defendants insist that because the plaintiff did not demand or request of any of the defendants earlier runs for its theater plaintiff is precluded from claiming any damages. Although the parties have briefed and orally argued this point on appeal, the plaintiff proceeds on the assumption that the District Court did not reach this question. However, as we read the District Court's memorandum opinion, it appears that the District Judge was of the opinion that demand is a condition precedent. In so holding we believe the District Judge erred. The failure of the plaintiff to demand that defendants refrain from their illegal trade practices could not legalize such trade practices nor immunize defendants against liability to those injured. Kobe, Inc. v. Dempsey Pump Co., 10 Cir., 198 F.2d 416, certiorari denied 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651; Ulrich v. Ethyl Gasoline Corp., D.C.W.D.Ky., 2 F.R.D. 357. The defendants had a duty to refrain from acts injurious to others and we know of no rule that states that demand is necessary in an action to enforce a liability arising from a tortious act. See generally, 1 Am.Jur., Actions § 36; 1 C.J.S. Actions § 27; 86 C.J.S. Torts § 51. Neither Section 4 of the Clayton Act, nor the terms of any agreement or undertaking by plaintiff with any of the defendants, express or implied, nor the circumstances of this case require a demand as a condition precedent to the maintenance of this action.

We must confess that there is some language in the decision by this court in Milwaukee Towne Corp. v. Loew's, Inc.,

7 Cir., 190 F.2d 561, certiorari denied 342 U.S. 909, 72 S.Ct. 303, 96 L.Ed. 680, which lends support to the argument advanced by defendants. See also J. J. Theatres, Inc. v. Twentieth Century-Fox Film Corp., 2 Cir., 212 F.2d 840; and see Vilastor Kent Theatre Corp. v. Brandt, D.C.S.D.N.Y., 18 F.R.D. 199; T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y., 16 F.R.D. 173. However, as we read the Milwaukee Towne decision, the court did not hold that a demand was a condition precedent to the maintenance of a private antitrust suit. The case was tried on the theory of a refusal to deal, which is also true of the J. J. Theatres case, at least in part, and the court held properly, we think, that without a demand or request to deal there could be no refusal to deal. But that is not the case here.

■■■ Defendants also seek to support the judgment below on another ground not passed on by the District Court but which was argued here both orally and in the briefs, namely, that the statute of limitations had run on plaintiff's cause of action before the complaint was filed. This action was commenced on September 1, 1950, prior to the enactment of Section 4B of the Clayton Act, 15 U.S.C.A. § 15b, and is therefore governed by Ill.Rev.Stat.1955, c. 83, § 15, which prescribes a two year limitation period. Whitsell v. Alexander, 7 Cir., 229 F.2d 47, certiorari denied 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461, and cases cited therein. The allegations of injury and antitrust violation by the plaintiff encompass "all time from July 20, 1933, to the date of this action," and the complaint, standing alone, clearly alleges a claim that is within the limitation period. The defendants argue that the affidavit of one Harry Lustgarten filed in support of their motion for summary judgment establishes that first subsequent run films were exhibited in plaintiff's theater on and subsequent to February 27, 1948, and "[t]hus, the last act from which damage could have accrued occurred, if at all, on February 27, 1948, more than two years prior to the filing

of the Complaint." Defendants arrive at this conclusion by an obvious emasculation of the complaint. The plaintiff alleges a conspiracy to monopolize *first* and first subsequent run film exhibition. We cannot understand how the fact that plaintiff's theater was moved up to a first subsequent run exhibiting position affects or negates the alleged effect on it of the first run monopoly and the clearance period which is imposed before it gets even first subsequent run films. At best this change in playing position may lessen the alleged diversion of patronage but it does not eliminate or legalize it. We conclude therefore that the complaint states a claim that is not barred by the statute of limitations. And in view of this conclusion we need not consider whether the plaintiff's amended complaint supplies the deficiencies which the defendants have asserted in arguing that the statute has run nor whether the Paramount decree has tolled the statute.

For the reasons set forth above, the judgment of the District Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

FINNEGAN, Circuit Judge, concurs in the result.

On Petition for Rehearing

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

Our holding in the instant case that a demand is not a condition precedent to the maintenance of a suit of this character and the seemingly contrary holding by this court in Milwaukee Towne Corp. v. Loew's, Inc., 7 Cir., 190 F.2d 561, certiorari denied 342 U.S. 909, 72 S.Ct. 303, 96 L.Ed. 680, may be a source of future confusion in this area of the law and we have thought it advisable to elaborate on this aspect of the case. We have already noted that Milwaukee Towne was tried on the theory of a refusal to deal and that the court held that without a demand or request to

deal there could be no refusal to deal. The defendants insist that this is a mere exercise in semantics and that the cases are not distinguishable on that basis. They seize upon the following passage from Milwaukee Towne as supporting their position that a demand is a condition precedent to the maintenance of a private antitrust suit:

"We know of no principle of law which authorizes a person aggrieved by the deprivation of a right either statutory or constitutional to recover for such deprivation in the absence of a demand or request for its exercise. With this thought in mind, we have carefully examined all the reported cases where damages have been sought in actions of the instant character against members of the motion picture industry and in other cases where the antitrust laws were relied upon, and in all such cases it appears that the plaintiff sought in some manner to exercise the right of which it allegedly was deprived by the alleged conspiracy." 190 F.2d at page 568.

The holding there, however, is much narrower in application, for the court continued, recognizing the very "semantic difference" which we are accused of utilizing:

"Furthermore, the instant case was tried on the theory that it was the refusal of plaintiff's request or demand for first run pictures which gave rise to its damages. In the complaint it was alleged that the plaintiff 'is legally entitled to negotiate for and obtain from defendant distributors the license of pictures suitable for first run exhibition in the City of Milwaukee, but plaintiff has been and is now prevented from so negotiating or obtaining such pictures for exhibition,' and that as a 'direct and proximate cause of the operation of said unlawful monopoly, conspiracy and agreement against plaintiff's business plaintiff has been subjected to loss and damage.' *We are of the*

*view that it cannot be held that defendants' conspiracy was the direct and proximate cause of plaintiff's damage because it was prevented from negotiating and obtaining first run pictures in the absence of a demand or request.*" (Emphasis added.) 190 F.2d at page 568.

The plaintiff in the instant case is not proceeding on this theory and under the facts of this case it obviously could not do so. By the terms of its leasing arrangement with the defendant B & K the plaintiff entrusted the operation of its theater to the discretion of the lessee. Plaintiff is therefore not in a position to assert and does not assert that it "is legally entitled to negotiate for and obtain from defendant distributors the license of pictures suitable for first run exhibition in the City of [Chicago]." If the plaintiff tried to assert or exercise such a right it would probably be in breach of the terms of the lease. The plaintiff does complain however that it was injured in its property by reason of activities forbidden by the antitrust laws and the defendants concede that "[w]here the injury results directly 'by reason of' failure of the defendant to obey the law, whether it is a traffic law or an antitrust law, a demand or request that the defendant 'obey the law' is obviously not a prerequisite to a cause of action." Under the admitted allegations of the complaint the defendants conspired to monopolize film exhibition in the City of Chicago and to divert patronage from the plaintiff's theater. The antitrust laws protect the plaintiff from such activities in much the same manner that the law protects its property from intentional physical damage. In neither instance must the plaintiff assert its right prior to suit by demand as the law makes the demand of the wrongdoer.

Although the Supreme Court has not had occasion to pass on this question, the following excerpt from Radovich v. National Football League, 352 U.S. 445, 453–454, 77 S.Ct. 390, 395, 1 L.Ed.2d 456, is particularly appropriate here:

"Congress has, by legislative fiat, determined that such prohibited activities are injurious to the public and has provided sanctions allowing private enforcement of the antitrust laws by an aggrieved party. These laws protect the victims of the forbidden practices as well as the public. * * * *In the face of such a policy this Court should not add requirements to burden the private litigant beyond what is specifically set forth by Congress in those laws.*" (Emphasis added.)

Furthermore, the issue of demand in Milwaukee Towne had an additional significance not present here. The plaintiff's theater had been exhibiting second run motion pictures and the plaintiff claimed that it was entitled to a first run exhibiting position. The question arose as to whether its theater was suitable as a first run house. Along with other evidence the absence of a demand for the "first damage period" was considered indicative of the fact that the plaintiff's theater was not suitable for that purpose. The court therefore concluded that even if competitive conditions had prevailed the plaintiff's theater would have still been a second run house, with the result that the plaintiff was not damaged by the trade practices complained of. In other words, the plaintiff failed to demand or request first run pictures because it recognized that its theater was not suitable for their exhibition, and even if a demand or request had been made the unsuitability of the plaintiff's theater would have precluded it from recovering damages. The significance of demand in this context related to the proof of damages upon the trial, and not to the prerequisites to a cause of action under the antitrust laws. Thus, the court said:

"Obviously, no damages were claimed for that period [the period when the plaintiff's theater was closed for remodeling] because plaintiff was not in a position to use first run pictures, and we think by the same token it was not entitled to

recover damages for the preceding period because not only did it fail to make a demand or request for first run pictures but recognized that its theatre was not suitable for that purpose." 190 F.2d at pages 568–569.

The defendants contend that the effect of our decision will cause every film distributor to deal with the theater operator at its peril unless each film contract is countersigned by the lessor. And protesting their innocence, the distributor defendants insist that they relied and had a right to rely upon the requests for pictures received from the plaintiff's tenant. Throughout this matter the defendants have found it convenient to ignore the allegations of the complaint which for present purposes are admitted as true. The complaint alleges that the distributor defendants and others conspired with the lessee to divert patronage from the plaintiff's theater. We do not have a situation where the film distributors merely supplied the plaintiff's theater with the run of pictures requested by the lessee; we have a situation where the run of pictures was determined by the dictates of a conspiracy between the lessee and the film distributors. The only peril to which our decision will expose the film distributors is the peril to which they have been subjected by Congress, and this is a peril which they can avoid by the simple expedient of refraining from activities forbidden by the antitrust laws.

Defendants concede that they had a duty to refrain from illegal trade practices, but complain that they had no way of knowing that the plaintiff considered their acts injurious in the absence of a demand or request. It is of note that the defendants do not assert that they did not know their acts to be injurious, but rather that they did not know whether the plaintiff would complain about them. But the plaintiff has complained and any lack of diligence in this regard will be penalized by the statute of limitations.

We adhere to the views previously expressed on the other issues presented by this appeal and accordingly the petition for rehearing is denied.

FINNEGAN, Circuit Judge.

I adhere to my previous concurrence in the result reached in the first opinion of this court.