Lawrence W. JOHNSON, Omaha, Nebraska, Plaintiff,

v.

READY MIX CONCRETE CO., a corporation, Omaha, Nebraska, et al., Defendants.

Civ. No. 03532.

United States District Court, D. Nebraska.

Oct. 26, 1970.

John T. Grant, Omaha, Neb., for plaintiff.

Dick H. Woods, Kansas City, Mo., for defendant Ash Grove Lime & Portland Cement Co.

C. E. Heaney, Jr., Omaha, Neb., for defendant Ready Mixed Concrete Co. and Lyman-Richey Sand & Gravel Corp.

MEMORANDUM and ORDER

VAN PELT, Senior District Judge.

This matter comes before the court on defendants' motions to dismiss (filings 9 and 10) on the ground that plaintiff is not a "person * * * injured in his business or property by reason of anything forbidden in the antitrust laws * * *" and therefore has no standing to sue. Specifically, defendants contend that any injury allegedly suffered by plaintiff is indirect, and not compensable by a private treble damages action under Section 4 of the Clayton Act, 15 U.S.C.A. § 15.

The rule is axiomatic that a complaint should not be dismissed for failure to state a claim upon which relief may be granted unless it appears to a certainty that plaintiff is not entitled to recover under any state of facts which may be proved to support his claim. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957); South Carolina Council of Milk Producers, Inc. v. Newton, 360 F.2d 414 (4th Cir. 1966); cert. denied, 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966); Congress Building Corp. v. Loew's Inc., 246 F.2d 587 (7th Cir. 1957). All facts which are well-pleaded must be taken as true. Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir. 1955).

The complaint alleges that plaintiff owned two fixed plants and one portable plant, together with the necessary equipment, for the production and sale of ready-mixed concrete in the Omaha market area. These facilities were leased to Johnson Ready Mixed Company and Johnson Aggregates Company in 1962. Lessee's operations ceased in June, 1966, allegedly because of the practices entered into by defendants which were designed to drive all of their competitors out of the Omaha market area.

The complaint charges that defendant, The Vinton Corporation, acting as a holding company, controls the activities of numerous corporations, including defendants Lyman-Richey Sand & Gravel Corporation, and Ash Grove Lime &

Portland Cement Company. Defendant Lyman-Richey in turn wholly owns its subsidiary, defendant Ready Mixed Concrete Co.

Plaintiff charges that defendants have conspired and agreed as follows: to set and maintain price levels and differentials charged for commodities and raw materials used in the manufacture of ready-mixed concrete in the Omaha area; to control and allocate the percentage of sales and prices of ready-mixed concrete in the market area; to allocate the availability of raw materials and prices charged for them between the defendants and other competitors; to allocate and regulate the prices charged to consumers for the finished product; to control and regulate job bidding and other activities in the Omaha market area; and to force plaintiff's lessee and other competitors to sell and produce their products on defendants' terms. The alleged design of this activity was to eliminate competition by acquisition and financial control of all competitors, and to establish a monopoly in the Omaha market area. As a result of these alleged predatory practices, plaintiff's lessees were forced to cease operation in 1966.

Plaintiff alleges that, because of their nature, the plants and equipment involved cannot be relocated in areas other than the Omaha—Carter Lake locations. Plaintiff advertised the equipment to potential ready mixed operators, but was unable to persuade anyone to come into the market area and engage in competition with defendant Ready Mixed, allegedly because of defendants' monopolistic practices. As a result, plaintiff alleges he was forced to sell his property at a loss, and that he has been damaged in his property, as a result of defendants' activities, in the amount of $276,000.

The question for decision is whether plaintiff has standing to maintain this suit under Section 4 of the Clayton Act, which provides as follows:

"Any person who shall be injured in his business *or property* by reason of

anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." (emphasis added)

It is now well settled that despite the seemingly broad scope of this language, standing to sue under Section 4 is strictly limited to those individuals who have been *directly* injured by the alleged violation of the antitrust laws. Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679 (8th Cir. 1966); South Carolina Council of Milk Producers, Inc. v. Newton, 360 F.2d 414 (4th Cir. 1966), cert. denied, 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966); Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2d Cir. 1955), cert. denied, 350 U.S. 936, 76 S. Ct. 301, 100 L.Ed. 818 (1956); Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9th Cir. 1955); Kirihara v. Bendix Corporation, 306 F.Supp. 72 (D. Hawaii 1967); V. T. R., Inc. v. Goodyear Tire & Rubber Co., 303 F.Supp. 773 (S.D.N.Y.1969). This is known as the "target area" doctrine.

In V. T. R., Inc. v. Goodyear Tire & Rubber Co., *supra,* the court pointed out:

> " 'Shareholders and officers of corporations as well as creditors and landlords have been held not to have standing to sue for treble damages. * * Undoubtedly, such persons suffer some financial loss when anti-trust violations are directed against the corporations in which they have an interest. But not every financial loss due to an anti-trust violation, however remote, gives a right of action.' " *Id.* at 781 (citation omitted)

Defendants contend that plaintiff's position was either that of a lessor or a creditor, and under the case law has no standing to sue. It is true, as defendants contend, that plaintiff must be within the "target area", and must not only be hit, but must be aimed at by defendants. Karseal Corp. v. Richfield Oil Corp., *supra.* However, if plaintiff can show himself within the sector of the economy in which the violation threatened a breakdown of competitive conditions, and that he was proximately injured thereby, he then has standing to sue under this section. South Carolina Council of Milk Producers, Inc. v. Newton, *supra;* Karseal Corp. v. Richfield Oil Corp., *supra;* Conference of Studio Unions v. Loew's Inc., 193 F.2d 51 (9th Cir. 1951), cert. denied, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952); Kirihara v. Bendix Corp., *supra.*

Under the "target area" doctrine, it is not necessary to find that plaintiff is in direct competition with defendants, or that there is a direct contractual relationship between them, South Carolina Council of Milk Producers, Inc. v. Newton, *supra;* Congress Building Corp. v. Loew's Inc., 246 F.2d 587 (7th Cir. 1957); nor under that doctrine is it necessary to prove that it must have been one of defendants' purposes to injure this particular plaintiff. Twentieth Century Fox v. Goldwyn, 328 F.2d 190, 220 (9th Cir. 1964), cert. denied, 379 U. S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964); Kirihara v. Bendix Corp., *supra.* Plaintiff must only establish he is within that sector of the economy in which the alleged violations threaten a breakdown of competitive conditions, and that there is a proximate causal connection between defendants' activity and plaintiff's injury, translatable into dollar damages. See State of Washington v. American Pipe & Construction Co., 280 F.Supp. 802 (S.D.Cal.1968).

What is the sector of the economy which is threatened by the alleged practices of defendants? It is the production and sale of ready-mixed concrete in the Omaha market area. The alleged restraint is directed against *anyone* who enters the market at that level to oper-

ate a ready-mixed concrete business, which would include plaintiff's former lessee, *and* any potential lessees who could not be persuaded to enter the Omaha market allegedly because of defendants' practices. Plaintiff's property would thus be included in that sector of the economy.

The key to recovery under Section 4 is interpretation of the words, "by reason of". SCM Corp. v. R. C. A., 407 F.2d 166, 168 (2d Cir. 1969), cert. denied, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1969). No hard and fast rule can be established in these situations delineating the line between direct and indirect or incidental damages, for it is not always clear. Generally speaking, however, the injury suffered is direct and proximate when it occurs within that area of economic activity which it could reasonably be foreseen would be affected by the antitrust violations. Hoopes v. Union Oil Co., 374 F.2d 480 (9th Cir. 1967); Twentieth Century Fox v. Goldwyn, *supra*; Karseal Corp. v. Richfield Oil Corp., *supra*; Kirihara v. Bendix Corp., *supra*. Here, plaintiff is seeking recovery in his own right, not derivatively through his former lessees. He is attempting to recover for damages suffered not as a result of lost rentals, but *by reason of* defendants' alleged practices in the sector of the economy in which his property was situated which prevented him from obtaining a fair price for his property. Allegedly no one was willing to enter into competition with defendants in the Omaha market area. He was thus forced to sell his property at junk prices, and was therefore allegedly injured *in his property* by defendants' activities. The court concludes that plaintiff's claim falls within the language and meaning of Section 4 of the Clayton Act, and that defendants' motions to dismiss should be overruled.

It is ordered by the court that defendants' motions to dismiss should be and hereby are overruled.