SOUTH CAROLINA COUNCIL OF MILK
PRODUCERS, INCORPORATED,
et al., Appellants,

v.

Joseph T. NEWTON, Jr., et al., Appellees.

No. 10138.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1966.

Decided April 4, 1966.

Lynn C. Paulson, Washington, D. C., and John C. West, Camden, S. C. (T. Allen Legaré, Jr., Charleston, S. C., H. W. C. Furman, Camden, S. C., Legaré & Hare, Charleston, S. C., and Murchison & West, Camden, S. C., on brief, for appellants.

Ernest F. Hollings, Charleston, S. C., and Ellis T. Fernandez, Jr., Jacksonville, Fla. (Falcon B. Hawkins and Hollings & Hawkins, Charleston, S. C., and Hazard & Fernandez, Jacksonville, Fla., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

The Clayton Act, Section 4, 15 U.S.C. § 15,[1] the Federal District Court in South Carolina has held, does not in the circumstances here authorize an action by appellant milk producers against appellee wholesale and retail grocers. The complaint charged them with combining and conspiring in restraint of trade and commerce in groceries, including milk and dairy products, in an attempt to monopolize trade and commerce in these commodities in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2[2] and to the injury of the plaintiffs.

Accordingly, on *motion for summary judgment,* the Court dismissed the suit of the South Carolina Council of Milk Producers, Incorporated, its president and secretary, against Joseph T. Newton and others, who were as owners, franchisers or operators doing business in South Carolina under the trade name Piggly Wiggly. The District Judge reasoned that because of "lack of privity of contract, direct relationship or mutual competition" between the milk producers and the defendants, the producers were not persons injured "by reason of anything forbidden in the antitrust laws", the predicate of liability under the Clayton Act. Concluding that the complaint states a case upon which relief can be granted, we reverse and remand the case for trial.

1. Section 4: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained * * *."

2. Section 1: "Every contract, combination * * * or conspiracy, in restraint of trade or commerce among the several States * * * is declared to be illegal * * *."

Section 2: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States * * * shall be deemed guilty of a misdemeanor * * *."

The South Carolina Council of Milk Producers, Incorporated, is a non-profit organization chartered by South Carolina with about 400 members who are milk producers in that State as well as in North Carolina and Georgia. The president and secretary of the Council, who are members and also milk producers, sue here as individuals and as representatives of all other members.

The defendants and their connections as alleged in the complaint are as follows:

1. *Commodore Points Terminal Corporation,* chartered in Florida with its principal place of business there, is engaged in the manufacture of store fixtures. It owns and controls

2. *Piggly Wiggly Corporation,* known as *Trade Name Corporation,* chartered by Delaware with its principal establishment in Florida and the owner of the trade name Piggly Wiggly. It grants franchises throughout the country for the use of the trade name and renders assistance to the franchisees, including extension of credit and guaranteeing their financial obligations. This corporation also empowers wholesale grocers to franchise retail grocery stores and assists the latter in the conduct of their businesses, receiving a percentage of the gross sales of all franchised Piggly Wiggly Stores. It authorized

3. *Piggly Wiggly Wholesale, Inc.,* which is engaged in buying and selling groceries with its principal location in South Carolina, to award franchises for the use of the Piggly Wiggly trade name. At the same time it performs various services for the franchised retail stores, for which Wholesale receives a percentage of their sales as its compensation.

4. *Joseph T. Newton, Jr.,* whose office is in South Carolina, is alleged to be "an owner, officer, director or stockholder of some or all of the corporations defendant" here.

5. *Paradise Ice Cream Co., Inc.,* a South Carolina corporation with its principal place of business there, was purchased within the two years preceding the institution of this suit by defendant Wholesale and other defendants herein, and is now operated by them as a milk processing plant.

6. *Greenbax Stamp Co.,* incorporated in South Carolina with its office at Charleston, is owned by defendant Wholesale and/or defendant Newton and it primarily engages in issuing and handling trading stamps for use by the franchised Piggly Wiggly stores. At times it has loaned money or extended credit to the defendant Paradise.

7. The remaining defendants are thirteen Piggly Wiggly retail stores located in South Carolina and franchised by Wholesale. They are alleged to own an interest in the defendant Paradise and to be representative of all the other franchisers, as a class, doing business in South Carolina. Leave is asked to join the unnamed retailers as defendants as and when they become known to the plaintiffs.

Alleging that all of the defendants are "regularly engaged in interstate commerce in groceries and other items customarily sold in grocery stores including milk and milk products", the complaint accuses them of engaging, since January 1963, in a combination and conspiracy in restraint of trade and commerce in groceries, especially milk and dairy products, in an attempt to monopolize such trade and commerce, contrary to sections 1 and 2 of the Sherman Act.

After describing the interstate phases of the operations, the aim of the combination, conspiracy and attempted monopolization and its accomplishment are next outlined, as follows. The sale of milk and its products is not used by the defendants for immediate profit but rather as a "drawing card" or "attraction" to bring trade in all groceries to the Piggly Wiggly stores. The strategy was to provide milk to these retailers for sale to the public below cost or well under the market price. To this end they acquired a milk processing plant —the defendant Paradise Ice Cream Co., Inc.—at Orangeburg, South Carolina, and there processed what was trade named

"Paradise" milk. This commodity was employed as a "loss leader". It was priced to Piggly Wiggly stores at such a low figure as to cause the Paradise plant to operate at a loss.

Further, when the giving of extra or "bonus" stamps issued by defendant Greenbax Stamp Company, with purchases of Paradise milk, did not lure grocery patrons in sufficient numbers, Piggly Wiggly stores were directed to sell half-gallons at 39 cents, despite the prevailing price of 53 cents. The milk was invoiced to the stores at 48 cents with a discount of 10 cents. When the South Carolina Milk Commission forbade defendant Paradise to sell for less than 48 cents a half-gallon *wholesale,* Paradise billed the retailers at 48 cents; retailers sold at 44½ cents; and Paradise rebated them the amount of their loss.

Supplementary allegations charge the defendants with persisting in these practices and in selling at "unreasonably low prices", each playing a part in the scheme to his or its advantage. The consequences of this conduct, the complaint summarizes, have been and are the unlawful diversion to defendants of "trade and commerce in milk and milk products between producers and processors and between processors and retailers and consumers".

According to the complaint, the result of the conspiracy has been to destroy the market price of milk in South Carolina to the point of threatening the economic existence of the dairy industry. This campaign, it is stressed, has caused milk and milk products to be sold in many South Carolina markets at destructively low prices contrary to the public policy of the State. Particularly, the grievance of the plaintiffs is that the program of the defendants "has caused the producers [such as themselves] in the State of South Carolina to have to sell their products at prices below cost or so near cost as to make their operations unprofitable". In this particular, the plaintiffs plead that as producers they have sustained losses on some milk sold and have been

deprived of profits they would otherwise have realized on other milk, to their damage in the sum of $500,000.

The motions to dismiss were grounded, and sustained by the District Judge, on a conclusion from the following undisputed facts. The plaintiffs did not directly sell to the defendants, the defendants were not producers in competition with the plaintiffs, and the plaintiffs' commodity was raw milk while the defendants' commodity was processed milk. The conclusion was that in these circumstances no "privity of contract, direct relationship, or mutual competition" existed between the plaintiffs and the defendants, hence there was "no directness of injury", without which no antitrust cause of action arose, regardless of the illegality of the alleged combination, conspiracy or attempted monopolization.

■ This application of the Federal statutes is, in our judgment, too narrow. The Clayton Act, § 4, 15 U.S.C. § 15, gives relief by way of damages to "[a]ny person who shall be injured in his business * * * by reason of anything forbidden in the antitrust laws." Section 4 does not in its terms limit relief to persons in a direct contractual or competitive status with the persons whose conduct allegedly violates the proscriptions of the Sherman Act. Moreover, while there are to be found authorities upholding as essential in an antitrust cause those elements now pressed by the defendants as absent here, we do not think the predominant decisional law so straitens the intent of the Clayton Act.

To begin with, the reliance on Loeb v. Eastman Kodak Co., 183 F. 704 (3 Cir. 1910) for this contention is not secure. It involved an attempt by a stockholder-creditor-employee of a corporation to sue individually for antitrust injuries inflicted upon the corporation. Plainly, the injury to the plaintiff was derivative and the corporate entity intervened to suffer the damage immediately and entirely.

Snow Crest Beverages, Inc. v. Recipe Foods, Inc., 147 F.Supp. 907 (D.Mass. 1956) is also cited by the defendants for

their position. Admittedly, the court there read section 4 of the Clayton Act not to "give a private cause of action to a person whose losses result only from an interruption or diminution of profitable relationships with the party directly affected by alleged violations of the antitrust laws". Consistently, it refused recovery to a supplier of a seller who was injured by unlawful combinations or restraints by competitors of the seller. Id. at 909. Of similar tenor are expressions and the holding in Volasco Prods. Co. v. Lloyd A. Fry Roofing Co., 308 F.2d 383 (6 Cir. 1962), cert. den. 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963).

In each of these cases there were two corporations with common ownership. One corporation supplied the other an ingredient of the final product sold by the second corporation in competition with the defendants, whose conduct constituted the antitrust violations. The decision in both instances was that the first or supplier corporation could not sue. One ground of the decision was that the injury was primarily to the corporation marketing the final product and the supplier did not gain a right of action by virtue of the joint corporate ownership. Our case differs from those two, in that here the item sold by the plaintiffs is not simply an ingredient of the corresponding commodity sold by the defendants but, as we later emphasize, is essentially the equivalent commodity. However, if either of the cited cases be read as declaring that a supplier who is not in privity or competition with one guilty of antitrust misconduct, but whose business is proximately affected by such misconduct, can *never* have a claim for antitrust damages against the wrongdoer, we could not follow the decisions that far.

■ If a plaintiff can show himself within the sector of the economy in which the violation threatened a breakdown of competitive conditions and that he was proximately injured thereby, then he has standing to sue under section 4. See Conference of Studio Unions v. Loew's Inc., 193 F.2d 51 (9 Cir. 1951), cert. den., 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952); Karseal Corp. v. Richfield Oil Corp., 221 F.2d 358 (9 Cir. 1955). This sector is sometimes designated as the "target area" of the defendants' illegal practices.

That even without allegations of directness of injury the present complaint made out a cause of action under the antitrust statutes, is manifest from the language of Radovich v. National Football League, 352 U.S. 445, 453–454, 77 S.Ct. 390, 395, 1 L.Ed.2d 456 (1957):

"Petitioner's claim need only be 'tested under the Sherman Act's general prohibition on unreasonable restraints of trade,' Times-Picayune Publishing Co. v. United States, 1953, 345 U.S. 594, 614 [73 S.Ct. 872, 97 L.Ed. 1277], and meet the requirement that petitioner has thereby suffered injury. Congress has, by legislative fiat, determined that such prohibited activities are injurious to the public and has provided sanctions allowing private enforcement of the antitrust laws by an aggrieved party. * * * In the face of such a policy this Court should not add requirements *to burden the private litigant beyond what is specifically set forth by Congress in those laws.*" (Accent added.)

Consider, too, the observation in Note, 64 Colum.L.Rev. 570, 585 (1964) that the Supreme Court's "pronouncement that the statutory language sets the *only* requirements that plaintiff must meet indicates that judicial glosses may be ill-founded." Commenting on judicially-imposed tests of directness of injury, i. e. "direct relations" and the "object of the violation", the author has this to say:

"These tests, although seeming to have the virtue of simplicity, fail to meet the real issue: the statutory purpose. To ask whether the plaintiff was 'directly injured' is to ask the wrong question; what the court should ask is whether the plaintiff (1) is, himself, within the class of persons entitled to protection and (2) alleges an injury of a type the statute was intended to guard against * * *. Its purpose

is so broad and its mandate so clear that any person who can show damage prima facie should be within the protected class. * * * "

■ The defendants' further argument that their product—pasteurized, homogenized, fortified and packaged milk —is different from the plaintiffs'—raw milk—only serves their contention that the parties are not competitors. It does not establish that the plaintiffs were not injured by the alleged prohibited acts.

■ Moreover, it does not disclose a lack of competition. The difference between the states of the milk in the hands of the plaintiffs and the defendants is not so distinct as to categorize the plaintiffs as suppliers of a mere ingredient of the commodity sold by the defendants. Hence there is no warrant for dismissal of the action on the theory that suppliers have no cause of action.

In the latter respect the case is similar to the circumstances in Karseal Corp. v. Richfield Oil Corp., supra, 221 F.2d 358. There the supplier, Karseal, furnished wholesalers car wax in the same condition in which it would be retailed to the consumer. Karseal sued for an unlawful restraint imposed by Richfield upon its gas stations not to sell any car wax except that sponsored by Richfield. The suit was allowed against the argument that a supplier has no cause of action. The present action involving milk sold by the plaintiffs and defendants in essentially the same form, is thus within the rationale of *Karseal*.

■ A kindred point urged by the defendants, as noted previously, is that there was no cause of action because there was no privity of contract between the plaintiffs and the defendants, i. e. the plaintiffs not selling to the defendants. The answer is that the cause of action is not dependent upon a relationship, contractual or otherwise, between the claimant and the offender, so long as the injury is a proximate result of the misdoing.

Both of these arguments—absence of competition and relationship between the parties—have been authoritatively spiked. In Karseal Corp. v. Richfield Oil Corp., supra, 221 F.2d 358, 363, the Court states:

· "The treble damage action is one for a tort and punitive and compensatory damage is the relief granted. 'Under the Clayton Act the right is not confined to persons in privity with the wrongdoer, but is given to anyone who has suffered injury to his business or property by reason of the wrongful acts.' Clark Oil Co. v. Phillips Petroleum Co., [8 Cir.] supra, 148 F.2d [580] at pages 582–583. Vines v. General Outdoor Advertising Co., 2 Cir., 1948, 171 F.2d 487, 491."

That decision was foretold by what was said in Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 236, 68 S.Ct. 996, 1006, 92 L.Ed. 1328 (1948):

"The statute does not confine its protection to *consumers, or to purchsers, or to competitors, or to sellers.* Nor does it immunize the outlawed acts because they are done by any of these. Cf. United States v. Socony-Vacuum Oil Co., 310 U.S. 150 [60 S.Ct. 811, 84 L.Ed. 1129]; American Tobacco Co. v. United States, 328 U.S. 781 [66 S.Ct. 1125, 90 L.Ed. 1575]. The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated. Cf. United States v. South-Eastern Underwriters Assn., supra [332 U.S. 533] at 553 [64 S.Ct. 1162, 88 L.Ed. 1440]." (Accent added.)

■ The pivot of decision presently is whether the defendants' asserted conduct was the proximate cause of the plaintiffs' asserted injury. If the damage was merely incidental or consequential, or if the defendants' antitrust acts are so removed from the injury as to be only remotely causative, the plaintiffs have not been injured "by reason of anything forbidden in the antitrust laws" as contemplated by the Clayton Act. Productive Inventions, Inc. v. Trico Prods. Corp., 224

F.2d 678, 679 (2 Cir. 1955); Karseal Corp. v. Richfield Oil Corp., supra, 221 F.2d 358, 363 (9 Cir. 1955); Conference of Studio Unions v. Loew's Inc., supra, 193 F.2d 51 (9 Cir. 1951); Schwartz v. Broadcast Music, Inc., 180 F.Supp. 322, 327 (S.D.N.Y.1959). This is a critical determination which must be made by the court on the evidence offered by the plaintiff. At this point the court is in a position to foreclose claims by those only distantly or tenuously hurt. Thus the apprehension of "wind-fall" recoveries is dispelled. In this process the court would rule upon the substantiality of the claim as it would in other damage actions.

▆▆▆ In disapproving the dismissal of the present suit, we are not finding that the actions of the defendants were in truth the cause of the plaintiffs' damage. Our judgment is only that the complaint when measured against the defendants' moving papers for summary judgment, presents a triable antitrust issue. Dismissal of a Sherman Act claim on motion, we are admonished, should be "sparingly practiced". Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). "[T]o state a claim upon which relief can be granted under that section [§ 1, Sherman Act], allegations adequate to show a violation and * * * that plaintiff was damaged thereby are all the law requires." Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 367, 5 L.Ed.2d 358 (1961). Disposition on motion is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Bolick-Gillman Co. v. Continental Baking Co., 278 F.2d 649, 650 (9 Cir. 1960); Congress Building Corp. v. Loew's, Inc., 246 F.2d 587 (7 Cir. 1957).

▆▆▆ As the District Judge noted, the objections raised by the motions to dismiss in respect to the nonjoinder of the other members and individual farmers of the South Carolina Council of Milk Producers, as well as the question of whether it is in truth a class action, are not fatal but are remediable by appropriate amendments.

On remand the case, after requisite amendment of the pleadings, should be accorded a plenary trial, since there are several genuine issues of fact to be settled. The judgment of dismissal will be vacated and the case returned to the District Court.

Reversed and remanded.