**Charles R. BURLEY et al.**

v.

**S. L. RADA et al.**

**Civ. A. No. 78–0518–R.**

United States District Court,
E. D. Virginia.

Sept. 19, 1978.

---

Robert P. Geary, Richmond, Va., for plaintiffs.

John B. Mann, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

As Sir Arthur Sullivan observed a century ago, a policeman's lot is not a happy one. By the very nature of their calling they are daily confronted with unpleasant situations and unpleasant people. Required to enforce the law, police officers must confront persons who have chosen not to obey the law. Required to maintain the peace, police officers are thrust into the midst of persons who have chosen to disturb the peace. Required to maintain order, police officers must deal with persons who choose to be disorderly. Required to protect life, liberty and property, police officers must arrest those who have destroyed life, who have trampled on the liberty of others, and who have been guilty of thievery.

These difficulties with which policemen are faced are not abstract. They are real. They are face to face and flesh and blood. The confrontation is between real people who are sworn to uphold the law and real people who have or may have violated the law. As human beings, police officers are subject to fear, misjudgment, error and overreaction. Also, lamentably, they may occasionally be seized by brutality, arrogance and maliciousness.

Overlaying all the difficulties of police officers is a pervading sense among substantial segments of the community that police officers are *always* brutal, arrogant and malicious. This twisted view of police officers exacerbates the already raw point

of contact between policeman and citizen. It is not surprising, under these circumstances, that even the best of police officers sometimes incur the resentment and wrath of those with whom they must deal. Now, all too often, this resentment finds release by filing suit against the police officer by the disaffected citizen.

Such suits are not judged by a jury of the vicinity, knowledgeable of the community and the conditions indigenous to it. Instead, the suit is filed in federal court and the charge is made that the officer violated the United States Constitution. What under the common law and state law may be nothing more than a simple assault and battery is transformed by a complaint filed in the federal court into an alleged deprivation of constitutional rights. A police officer, who may merely be trying to perform his difficult duties, is called upon to defend himself in federal court against a charge of constitutional dimensions and if the citizen-jury believes the citizen-plaintiff rather than the police officer, the officer is required to respond personally in damages and personally pay counsel fees for plaintiff. Even when an officer succeeds in convincing the jury that he did not deprive another of his rights under the Constitution, the apprehension, legal fees and costs incident to a lawsuit may severely affect the policeman's well being. Further, and more serious for the rest of us, the fear of suit clearly may result in timidity when resoluteness is required, in indecisiveness when a decision is needed, and neglect when action is imperative.

■ These considerations aside, Congress has enacted legislation in 42 U.S.C. § 1983 and the courts have interpreted the statute to create a federal forum wherein citizens may test their right to damages when the actions of police officers adversely affect them. The complaint in this case seems to bring such a situation before the Court. It appears that there was some type of civil disturbance in the neighborhood of the Town Square Apartments in Ashland, Hanover County, Virginia. It may be inferred that police officers, including the defendants, were on the scene to disperse the crowd contributing to the disturbance. The plaintiffs, apparently innocently, arrived at the scene and were promptly directed to leave. An altercation followed in which firearms were brandished and plaintiffs received minor injuries from a kick or a blow from a fist or both. It is not alleged that the defendants delivered either the kick or the blow. Such facts hardly implicate the majesty of the Constitution of the United States.

■ The plaintiffs have not cited a case in which a fracas of such a minor nature was held by a court to constitute a violation of § 1983. The Court is inclined to dismiss the action on defendants' motion under Rule 12(c). Yet we are abjured not to dismiss an action on the pleadings unless it appears to a certainty that the pleader would be entitled to no relief under any state of facts he could prove in support of his claim. *Johnson v. Mueller,* 415 F.2d 354, 355 (4th Cir. 1969).

■ It is conceivable that plaintiffs can show that there was no disorder in the area and that the attack upon them was wholly gratuitous and completely without justification. Constitutional questions would then be implicated. It may be that plaintiffs can show a pattern of police harassment against them intended to prevent their exercise of a federally guaranteed right. This would involve constitutional injury. Plaintiff may be able to show that the police officers' actions were animated by racial bias. The Constitution forbids such. While it may be assumed that the complaint, which does not clearly allege any of these, states the best case available to plaintiffs, such an assumption is not sufficient to put the question beyond doubt. *South Carolina Council of Milk Producers, Inc. v. Newton,* 360 F.2d 414, 420 (4th Cir. 1966).

Accordingly, plaintiffs' motion for judgment under the provisions of Rule 12(c) filed herein on 7 August 1978 must be denied. After appropriate discovery a motion for summary judgment under the provisions of Rule 56 may be considered.

An appropriate order shall issue.