ENGINE SPECIALTIES, INC.,
Plaintiff, Appellant,

v.

BOMBARDIER LIMITED et al.,
Defendants, Appellees.

No. 78–1492.

United States Court of Appeals,
First Circuit.

Submitted Oct. 9, 1979.

Decided Feb. 21, 1980.

John Vanderstar, Washington, D. C., with whom John D. Taurman, Covington & Burling, Washington, D. C., Paul B. Galvani, Ropes & Gray, Boston, Mass., and Paul V. Donahue, Pittsfield, Mass., were on brief, for Bombardier Limited, et al.

Thayer Fremont-Smith, Boston, Mass., with whom Robert S. Frank, Jr., Wm. Shaw McDermott, and Choate, Hall & Stewart, Boston, Mass., were on brief, for Engine Specialties, Inc.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, PETTINE, District Judge.*

PER CURIAM.

After consideration of the petition for rehearing and the briefs filed in connection therewith, it is ordered that the corrected judgment entered July 26, 1979, *nunc pro tunc*, shall remain in effect.

COFFIN, Chief Judge (dissenting).

In view of the intrinsic importance of the issue of standing in private antitrust actions and the relative infrequency of Supreme Court review in this complicated area, we granted rehearing in this case to reconsider whether plaintiffs Durham Distributors, Inc. (Durham) and Watercraft Sales Center, Inc. (Watercraft) have standing to recover for injuries caused as a result of an illegal horizontal agreement between appellants Bombardier Limited (Bombardier) and Agrati-Garelli (Agrati). My brethren have determined that our initial decision was correct and they stand on that opinion. Fully recognizing the complexity of the issues involved and the closeness of the question presented, I nevertheless respectively dissent from that view and would hold that Durham and Watercraft do have standing.

The full relevant factual background of this case is set forth in the prior opinion of this court, *see Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1 (1st Cir. 1979). I briefly summarize only the especially pertinent portions thereof.

In late 1970, appellants Bombardier and Agrati entered into a territorial and product market division agreement. In return for Bombardier's agreement to abandon the manufacturing and selling of its own "Fun-Doo" minicycle, Agrati agreed not to manufacture or sell a new 50–100 cc motorcycle, to terminate its exclusive distribution agreement with Engine Specialties, Inc. (ESI), and to grant Bombardier exclusive distribution rights for Agrati's "Broncco" minicycle in North America.

Durham and Watercraft purchased Agrati minicycles from ESI for subsequent distribution to dealers. When ESI had its supply cut off pursuant to the Agrati-Bombardier agreement, Durham and Watercraft likewise lost their ability to procure Agrati minicycles, the subsequent distribution of which was taken over by Bombardier and its subsidiary, Bombardier East, Inc. ESI and Durham went out of business, and Watercraft discontinued sales of minicycles.

* Of the District of Rhode Island, sitting by designation.

There is no doubt that Durham and Watercraft were injured as a result of the described transactions. This fact alone, as the court indicates in its opinion, does not give them standing. It should, however, lead us to proceed to consider in further detail the question of standing on the facts of this case.

The underlying substantive antitrust violation which gave rise to this case was a horizontal agreement between Agrati and Bombardier to allocate territorial and product markets between themselves and terminate ESI's role in the distribution of Agrati minicycles. Horizontal market divisions in general are condemned under the antitrust laws because they serve no purpose other than the stifling of competition, *White Motor Co. v. United States*, 372 U.S. 253, 263, 83 S.Ct. 696, 702, 9 L.Ed.2d 738 (1963). In this case, it is possible that the purchasers of minicycles, including ESI, Durham and Watercraft, would have benefited had Bombardier chosen to compete with Agrati rather than illegally agreeing not to do so. "[H]ad Bombardier and Agrati not so conspired, there would have been *two* minicycles . . . to choose from . . . rather than the *one* that the conspiracy delivered up." 605 F.2d at 14. In any event, ESI's bargaining power vis-a-vis Agrati most certainly would have been increased had Agrati not succeeded in securing Bombardier's agreement not to compete in the manufacturing and selling of minicycles.

This is not to say that ESI necessarily would have retained its ability to purchase minicycles for distribution. It is to say, rather, that the question whether ESI would retain that ability would have been determined by the forces of competition rather than by agreement between competitors. "[T]he freedom guaranteed each and every business, no matter how small, is the freedom to compete—to assert with vigor, imagination, devotion, and ingenuity whatever economic muscle it can muster. Implicit in such freedom is the notion that it cannot be foreclosed with respect to one sector of the economy because [others so agree]." *United States v. Topco Assoc.*, 405 U.S. 596, 610, 92 S.Ct. 1126, 1135, 31 L.Ed.2d 515 (1972). Because the damage to ESI caused by the Agrati-Bombardier agreement was the loss of that freedom, we correctly found that it is able to recover antitrust damages against the defendants.

Turning to Durham and Watercraft, I note that they in effect tied their fortunes to ESI's success in obtaining access to the minicycle manufacturing and sales market. They therefore could be charged with assuming the risk that ESI might prove unsuccessful if, for example, Agrati unilaterally terminated ESI as its chosen distributor. They did not however, assume the risk that Agrati and Bombardier would get together, carve up their territories according to agreement, and completely foreclose ESI from the minicycle market. When that foreclosure occurred, Durham and Watercraft suffered injury which was similar to, albeit derivative of, that suffered by ESI. All were foreclosed from the minicycle market as a result of the Agrati-Bombardier agreement. The key question therefore, is why should we distinguish between ESI on the one hand and Durham and Watercraft on the other on the issue of standing.

In attempting to show that the court errs in creating such a distinction, I note first that the mere fact that the injury to Durham and Watercraft was derivative, or that they operated at different levels of the minicycle distribution market than did ESI is not itself dispositive. Courts have often found standing in such circumstances. *See, e. g., Sanitary Milk Producers v. Bergjans Farm Dairy*, 368 F.2d 679, 688–89 (8th Cir. 1976); *South Carolina Council of Milk Producers v. Newton*, 360 F.2d 414 (4th Cir.), *cert. denied*, 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966); *Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358 (9th Cir. 1955). This fact does, however, justify a careful scrutiny of a variety of additional factors, because the derivative nature of the injury, while itself not dispositive, can indicate that other reasons exist for denying standing. *See, e. g., Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 54 L.Ed.2d 164 (1977) (duplicative recoveries).

A helpful analysis of the pertinent possible factors is set forth in 2 P. Areeda and D. Turner, Antitrust Law ¶¶ 334–341 (1978). Courts have generally tended to focus upon various sets of these factors under the rubric of either the "target area" test or the "direct injury" test. My brethren have opted for such an approach in this case. Finding the use of these rubrics unhelpful and in this case misleading, *see generally*, D. Berger & R. Bernstein, *An Analytical Framework for Antitrust Standing*, 86 Yale Law Journal 809 (1977), I prefer to proceed to a direct analysis of the pertinent factors themselves.

The fact that the injuries to Durham and Watercraft derived from those to ESI gives rise to a concern that awarding damages to both sets of plaintiffs might result in the awarding of duplicative recoveries. In this case, however, ESI, Durham, and Watercraft joined as plaintiffs and the measure of damages employed was lost profits. Thus, granting Durham and Watercraft standing will not result in duplicative recoveries since each party will only be reimbursed for its own actual injuries, nor will the defendant incur the risk of inconsistent judgments. Indeed, the court's decision to deny standing might result in a windfall to the defendant. Moreover, since the lost profits measure of damages was employed and since the injury consisted of complete foreclosure from the market, allowing Durham and Watercraft standing would not create the complicated damage computations which the court in *Illinois Brick* sought to avoid with regard to "pass on" damage measures in price fixing cases. *See* 431 U.S. at 740–45, 97 S.Ct. at 2071–2074.

The lack of a possibility of duplicative recoveries is a particularly important factor. The fear of allowing such recoveries has been a major rationale behind the judicial limitation of the Clayton Act's seemingly limitless literal grant of standing. Once this rationale is removed, as it is in this case, I think we should be hesitant to continue to limit the Act's broad language given the substantive congressional policies of compensation and deterrence which lay behind its enactment, *see* D. Berger & R. Bernstein, *supra*, as long as the injury for which plaintiffs seek compensation is one which the substantive antitrust rules are intended to prevent.

The derivative nature of the injuries in this case also requires us to focus our attention on the possibility that problems of tracing causation might render an award to Durham and Watercraft unduly speculative. In some cases, there may be "too many layers, changes of product form, or independent business decisions by intermediate persons to permit reasonable tracing of the connection between the plaintiff's injury and the defendant's violation." 2 P. Areeda and D. Turner, *supra*, ¶ 334e, at 168. Here, however, the basic product—the minicycle—remained unchanged as it passed from defendants to ESI and then to Durham and Watercraft. Thus, the problems of tracing causation and apportioning damages are not present. *Compare South Carolina Council of Milk Producers v. Newton*, 360 F.2d 414 (4th Cir. 1966) *with Billy Baxter v. Coca-Cola Co.*, 431 F.2d 183 (2d Cir. 1970), *cert. denied*, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971). *See generally*, 2 P. Areeda & D. Turner, *supra* at ¶ 340d.

Finally, I address the point upon which the court bases its holding—that Durham and Watercraft were "hit but not aimed at". 605 F.2d at 17. On further reflection, I find the court's reliance on this point misplaced and the major cause of what I regard as its error. The pertinent inquiry required in this case is not which companies were "aimed at" by the defendants, but rather which area of the economy was affected in a manner that the antitrust laws are designed to prevent. *See, e. g., In Re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 129 (9th Cir.), *cert. denied*, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). "In order to state a cause of action under the anti-trust laws a plaintiff must show . . . that he is within that area of the economy which is endangered by a breakdown of competitive conditions in a particular industry." *Conference of Studio Unions v. Loew's*, 193 F.2d 51, 54–55 (9th Cir. 1951), *cert. denied*,

578

342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952).

In holding that ESI had standing, we necessarily held that the distribution level of the minicycle market was affected by the agreement between the manufacturers. Indeed, in this case it would have been particularly inappropriate to have held otherwise, for here the defendants as part of their agreement jointly dictated the manner in which the minicycles would be distributed. Specifically, they jointly agreed that ESI would no longer be able to obtain minicycles, either "Bronccos" or "Fun-Doos". Since Durham and Watercraft were minicycle distributors and their access to the manufacturing market through ESI was completely foreclosed by the defendants' agreement, they, too, were in the area of the economy affected by the illegal aspects of the defendants' actions.

In light of the foregoing analysis, I would find that Durham and Watercraft do have standing to recover for injuries caused as a result of the illegal and horizontal agreement between Agrati and Bombardier.